Good morning. My name is Greg Peterson. I'm the attorney for the plaintiffs. With me is Kim Nguyen, one of our partners. This matter is before the court on three separate docket numbers, as I recall. The first issue has to do with whether or not the trial court abused its discretion with regard to granting of Rule 37 sanctions at the time of a motion to eliminate The salient points there are, in my view, that the move-ins in that case never moved pursuant to Rule 37. None of the safeguards, none of the elements, none of the requirements of Rule 37 were followed. At the time of an eliminating motion, which, by the way, when it's reviewed, results more like a summary judgment motion presented at the time of trial, the court would have Well, can I just get a clarification, if I may? On 06-56380, do you agree that the order denying the motion to eliminate is not right for us? There's no jurisdiction in our court to consider that at this point? Do you agree with that? I saw that issue, and, Ashley, that was put to an end by an April 16, 2008, order of the district court closing the case, saying that it was improvidently not closed. So I would submit it. April what? April 16. Let me double check. It was April 16 of this year, 2008. Was that made available to the court? Because I've not seen that. And I have one firm one to another, so I have just gotten that myself. So I have a copy, I believe, if you would like me to provide it. I don't know about my colleagues. Are the rest of you seeing that? What's it say? It basically says, and I'm paraphrasing from memory, it says that the court, this action is dismissed. It should have been dismissed at the time of entry of judgment, and it was not. And, therefore, I think that cured that issue. I would have agreed that there was an argument that it could have been dismissed otherwise, but since it has the finality necessary, I think it is subject to the district court. If you have that with you, since we're going to go to conference immediately after this hearing, that perhaps you could provide it to the clerk and we could get copies made that normally we'd have you send it in afterwards, but I think on that issue it would be helpful to know. Do you all have any problem with that? No, Your Honor. We agree that the April 16th order resolves that issue. Great. Thank you. Sorry. So as we're facing this issue in the trial court, and we're coming up on trial, we're faced with an issue of discovery as to whether or not, and it's a matter, actually it's a very important matter for this circuit because it's not resolved. What is the extent of discovery in a 216B class action opt-out? And that issue is facing many courts all over the state right now and is in need of this court's guidance, and I say that because I'm in many courts where it's in need of guidance. We have a number of opinions. Many of them say it doesn't apply. The more precedential opinions say it doesn't apply because they're from district courts. We have a couple of magistrate opinions that have come down and have discussed the right to take discovery, but under Rule 26 there has not been a definitive statement that there is going to be disclosure, and when I'm handling a case of 9,000 opt-ins, I don't know how I'm going to give disclosure under Rule 26 when the courts and various courts are going to say to me, well, we don't want to do that much discovery. We don't want that many motions for summary judgment. Well, at some point you're going to want to put on your proof. Yes, we are. So you need to know what you're going to prove, and they're entitled to know what you're going to prove. But they do know because most of it comes from their records. More importantly in this case, the defendants took the position that discovery was limited to these two plaintiffs, and as we argue in our brief, that was their position. They did not provide us with the records. They actually, as the court takes a look, only had records for six people. There is no way that a plaintiff's lawyer can articulate the exact amount of damages that the jury may presume are fine. We can't limit the damages. You can't tell them anything about which of them? Oh, no, we try and give them examples of these are what the testimonials are, and this is where we're going with this. And we have estimates under the standards that when there are no records, the employer has to come forward and prove those hours are not correct. But weren't we talking about the initial disclosures before discovery? We did give initial disclosures before discovery. On the opt-in? On the two people that were then in the case. The opt-ins came later. They were disclosed. Our estimates were disclosed in a settlement conference. But as to the... But don't you have a continuing obligation to do disclosures? So if you gave disclosures as to the two named people, once the opt-in plaintiffs were identified, didn't you have a continuing obligation to give disclosures regarding those individuals? We did. There were no preclusions on those two individuals. No, I mean the opt-in. As the opt-ins come in, this is where the class action issue gets to be something that really needs to be addressed from a policy point of view. As the trial court noted, there's a split in authority on this issue. I did the Pizza Hut case where the magistrate judge made the following observation, and it's poignant for the person that wrote it in my firm not doing something I think he should have. He said, you didn't object to anything except you can't take discovery into class. And since that was your only objection, I'm going to allow discovery. The caveat was there was no objection as to other basis, the number of people or anything. It was just a flat objection. That objection should have been more finely tailored. Other cases have said you just plain can't do that because there is no practical way in some of these class actions to give a breakdown per person. And what we end up doing, like I did for the 9,000 officers in the LAPD, was a reference to a magistrate to deal with these issues. But you cannot, unless you get the records, which we didn't get, come up with much more than a guess, which we gave them, and there is no other way of doing it. So tell me exactly what you wanted to prove that they didn't let you prove, the judge didn't let you prove. What our proposal was is to put these people on the stand and have them testify. Which people? The opt-ins. Have them testify as to the hours that they worked. We don't have records, so they get to testify as to what they would have in terms of various working hours. We were going to then have the penalties and the other areas of assessed damage. They were going to testify about how many hours they worked, but you hadn't, according to the judge, supplied the other side with that information in advance. Do I understand the story? I want to make sure I get the story right. What we hadn't provided is any calculations on damages according to the defense. We had provided calculations on damages. They know you want to call Joe Blow and he would testify. They know, and they know what our estimate is, because that we discussed in the settlement conference. What we didn't give them was any kind of a formal discovery, because there's a difference between Rule 26 is giving something up as a matter of voluntary compliance. In most of the cases that I've dealt with, you're not required to go out and gather every class member's data, because we, most of the time, end up resolving these cases not with a trial where we call 9,000 witnesses or even at least 60. We didn't get to the final end of how we were going to prove out this case in this trial, because it was severed. That prevented us from having to address, well, how are we going to address what the calculations will be for the rest of these people? Normally, in a trial like this, it's a class. It's an opt-in class, not an opt-out class. You still follow the class procedures. And there's a long list of cases saying you follow the class procedures. Here, with some 64 people going to trial, that's at least 30-something trial days. The trial judge, as the record reflects, did not want to spend that much time in trial and was looking for alternatives. The trial judge, in light of this claim that we hadn't given enough discovery, which, by the way, they hadn't given us any of either, on the same theory, they only have to give two, said, well, we can remedy this by severing the matter, which she said on the record, which it made sense anyway, because we needed to establish in the first prong the liability. I mean, we can't tell the damages if we don't know if it's a one- or a three-year statute. So that cured all of that. If it's severed, then what difference does it make that the district court did not allow proof of damages of the severed claims? Because the district court precluded those claims from going forward. Ever? Ever. And that's the problem. And that brings the drasticness of the remedy into play when it's a terminating sanction, which is why it would have been jurisdictionally proper, I believe, before the court, because it was a terminating sanction. And it's a terminating sanction on a basically ex parte basis, on a motion in limine, where the issue is the same as their issue, not presenting us materials, on the same concept that it only applies to these two named people. So the court's saying, well, there is a split of authority, and it is not entirely clear that there was an obligation on the part of the plaintiffs to turn damage calculations over. That's in the record at 115.8 and 9. We, and I've done this for many years, we have tried to have these bifurcated so we can deal with the damages later, because until the trial court gives us a ruling on a whole number of things, and we made some rejudgment motions, as I recall, you can't really give an accurate estimate of damages in this kind of a case without the payroll records. But if there is a split of authority on it, how can we say it was an abuse of discretion for the court to go one way on the split? Well, there's a split of authority, but when the court goes to terminating sanctions, that has to be the most drastic remedy, and by Ninth Circuit standards, it has to be found to have been done deliberately and with an intent. But actually, it's not terminating sanctions, because you can still go forward with your case on, in part. You just can't go forward with the, for the opt-in plaintiffs based on your representation. Well, you can't go forward with them, and they are plaintiffs. Once they opt in under 216B, having become a plaintiff, it is a terminating sanction as to their case. As to damages, but not as to liabilities, so you still can do the judgment. She closed the case. I'm sorry, Judge Rawlinson. She cut the case off, and that's what the order in April does. It basically terminates the case. The opt-in plaintiffs case? Yeah, the whole file. It's closed, and so their rights to go forward were terminated, and that is why the heightened standard under 37 becomes important, particularly since it's the same on both sides. And if you take a look at the cases, there's, we have not met any of the violation levels that justify those kinds of terminating sanctions. So the next subject, if I may, I don't want to run out of time, turns to granting a motion. Before you get there, can I, I just want to be absolutely certain, now we have this letter here. I want to be absolutely certain for where we are with respect to these opt-in plaintiffs. Clearly, before we had this letter, there was discovery both ways with respect to the two people, right? Yes. And so there was no problem there with moving forward. They have other issues, but not the issue that you're talking about. Before we came here today, my understanding is, at least, we had these other people, we didn't have an appealable order, we're not going to get there. I'm sorry. And so now we have to determine the impact of this, but when this was entered, you say this was a terminating order, and you say that because the judge had previously ruled in the motion in Lemony's case that this was a terminating order. She's saying that if you're not going to provide this discovery, then you're not going to be able to put on any testimony by these opt-in plaintiffs. Is that correct? She said, at the end, yes, she said, you're not going to be allowed to put on any evidence. Okay, so that's what you mean, that it is a case concluding order, because if you can't put on any evidence, by definition, you lose. Yes. Okay, so this is, in fact, a termination that allows us to review it. Do you feel that, at this point, this issue is right for us to review, even though it kind of lagged behind the other two? No, in one sense, I was surprised to see the order, because I thought that this Court would decide issues without that, possibly. I was not sure how the Court would proceed. If you would find it was terminating sanctions on its face without that order. As to that, I feel comfortable. As to the wrinkles, the order adds, no, I'm not really comfortable that we just got it and the briefing was closed because we didn't get to address it in a briefing, if that's what you're asking. I mean, at least for myself, to some degree, I'm flying blind. This is not really fully briefed. The other folks, there was discovery, so you don't have much on that. Your opponents, of course, say that with respect to the opt-in plaintiffs, that's not before us, we don't have jurisdiction and so on, and you focused your attention on other issues in the case. I'm just wondering whether, well, at that time, if I may, Judge Smith, I was actually looking at putting the, I was actually thinking, procedurally, there must be some way to reopen this in front of the District Court after this appeal, and when this order came in and I saw it for the first time, I realized that hope was abandoned, or not, and there we are today. But as to the briefing of the opt-ins, that has not occurred for a number of reasons. On the finality, it should be on whether or not it's... Right. Well, let's assume for a moment that it is finalized. Where are the cases, where is the briefing that we look at to address the issue that you're talking about? Because it really is not articulated by both sides in the other part of the case because the other two did have discovery, so that really wasn't an issue. Well, my colleagues may feel differently, but that's how I feel. Well, in looking at the 56 or so remaining people in this case, and those people do not have the benefit of briefing on the issue presented by the April 16 order. That I would appreciate having a chance to do. As to the issues briefed, I think we covered them. As to the discovery, we were covering all of them. But as to the finality and what this means in terms of there is nothing left, literally nothing left for them to try, that's a different issue. We believed we had a right to go back on penalties because those aren't subject to discovery. There's other legal theories that aren't in this brief that we can go to. Counsel, when did you discover the existence of this order? Your Honor, I've been out sick through the surgery since February. I just started back to the practice, and I left Jackson DeMarco in March. I got this very recently. I would not say more than three weeks that it passed my desk, and I didn't, you know, when you're coming back, a lot of things pass your desk the first day or two. And so when I was getting ready for this, I reviewed the brief again and saw the reference to it not being final. I said, no, this order took care of that. And I apologize. I didn't get it to the court sooner. But it's been a hectic recovery. Would I be correct, then, if I understand what's going on here, that every other issue would be ripe for our ruling that has been briefed, except for the effect of the motion of limity with respect to the options? I believe that would be true to the exception of those issues I did not believe were foreclosed that apparently are foreclosed penalties and such. So there are issues in there I do not believe would have been foreclosed or were not foreclosed, but I believe the finality of the order and its dispositive nature brought it up on appeal through that basis, and we argued that. I mean, we could rule now on this, with the briefing we have on the lunch period business, right? Yes. We could rule now with what we have on whether there was an injury. Yes. We could rule now on regarding the attorney's fees. Yes, and... In the one-year versus three-year statute of limitations, that's been disposed of. Those can be dealt with. So the only thing that would conceivably be still kind of up in the air... Is that issue. Yeah, you're right. That issue is the... Let me turn quickly to one thing, though. There is a Rule 68 out there as to all of these particular people. Well, not all of them. That's one of the interesting points. It isn't as to all of the parties, which I understand renders that void. But apart from that, there was a recognition from the people on the defense side of what they thought the damages were. Providing, and this is interesting, they never gave us any of the records. The evidence is they didn't have records. We did the best we could on estimates, but a 26 disclosure also has one effect that I think is very dangerous in a class action. It can become binding. And how can you give an accurate disclosure of an amount due when, A, you don't have the records, B, your clients can't give you a complete and full explanation? So it gets to be difficult. Okay. Well, thank you very much, Mr. Peterson. Thank you. Good morning, Jim Newman, for the Appellee's Construction Protective Services. I'd first like to address the question that the courts brought up about this April 16th ruling. The issue of the status of the opt-in plaintiffs was something that we has been fully briefed, both in the appellant's brief, they fully briefed why they felt the order was improper. And we raised the issue of it being an interlocutory order because the case law, as we researched this, indicated that an interlocutory order would not be appealable and they hadn't established the standards to show that the court did have jurisdiction. And while we wanted the court to decide this once and for all, because as you'll appreciate from our briefing, the issue about this case is that it has gone on and on and on for a case that should have been decided with a trial. Everything should have been put to rest, and now they're asking to have the case extended and extended. So from your perspective, now that the order that we've just seen and not had a chance to analyze, now that that has been entered, the issues that we are dealing with as far as the discovery requirement for the plaintiffs to provide discovery for the opt-ins, is ripe for our resolution. You think it's been fully briefed by both sides? Yes. And let me point out that in our brief on page 22, we pointed out the problem and said if the opt-in plaintiffs could have expedited appellate review in any number of ways, they could have asked the court to schedule a trial date and motion schedule, they could have stipulated that no other relief would be available to them and agreed to entry of final judgment, or they could have requested certification of a controlling question, a law pursuant to 28 U.S.C. 1292B. The problem that we faced was once they'd appealed, we couldn't go into the district court ourselves and ask the court to do something. Well, counsel, that leads me to my question. Did the district court have jurisdiction to enter this order while the case was pending on appeal? Yes, I believe that the court can enter a ministerial order, and my assumption is that the court can enter a ministerial order and when the briefing was fully completed, either the district court reviewed the briefs or someone in the court of appeals called to ask about this issue, and the court determined, wait, this case is still pending, and issued a ministerial order. The court now has a copy of that order, which says case should have been closed. And the reason why that order is correct is that the plaintiffs brought a motion before Judge Phillips asking the court to revisit the question and permit them to present supplemental disclosures, which was decided in August or September of 2006. And the court issued a lengthy opinion, which the appellants didn't include, but we put in the supplemental excerpts of the court's opinion, and that is quite clearly why the court's order resolves the question of whether or not there's anything left to decide in the district court. If this order purports to speak as of September 1, 2006, as opposed to now, so what is it, a non-fraud order? Is that what it is? And following up on Judge Rawlinson's question, was the order, was the appeal, had that been filed as of September 1, 2006, or was that when the court issued its initial order of sanctions? No, it's when the court issued the final amended judgments as to plaintiffs Hoffman and Lopez. Those final judgments were entered as of September 1, 2006. And so I think what the court did was say, well, it appears that this case does remain open, but it should have been closed in its entirety at that time. You regard this as a final judgment now, right? Right. They regard it as a final judgment, and you regard it as a final judgment? Yes. Okay. I guess it will be up to us to see if we agree with both of you, but let's go on to the merits of that. Okay. Thank you. I'm going to focus first on the question of the motion granting of the, the order granting the motion in limine. And as I mentioned before, there, the court issued two orders. The first order was issued granting the motion in limine at the time of trial, and then the court subsequently, while post-trial matters were pending, the plaintiffs went in and asked the court, moved the court to permit them to make supplemental disclosures as to the opt-in plaintiffs, and the court denied that motion. So there are two orders that collectively address this issue. There's a number of things that Mr. Peterson said that I think need to be addressed. First of all, he keeps referring to this as discovery. Well, the obligation, the motion was based on their failure to disclose a computation of damages, and that's pursuant to Rule 26A. Part of their, of the party's obligations to present a computation of damages and explain what remedy they're seeking, because it gives the opposing party the opportunity to prepare their case, respond, make settlement decisions, and prepare to defend the case. You knew, I just want to make sure I understand what you had and what you said you should have gotten. You knew that these people were going to testify? At the time of trial, we knew that they had, that they were going to testify, because the plaintiffs' exhibit list listed all 60, listed 66 different named parties as witnesses. So, yes, we knew that they were going to testify. We had never... We didn't know what the plaintiff's theory of the case was. If the court reviews, again, we put into the supplemental excerpts of record, we put in the transcripts of what transpired at the pretrial conference. Basically, what happened at the pretrial conference, and this is also cited in the court's order denying the motion for new trial, which is another 30-page order. The parties appeared at the pretrial conference on February 12, and the court asked whether the parties were prepared to proceed. Mr. Peterson responded that the plaintiffs were prepared. We responded that we were not prepared as to the opt-in plaintiffs, because we'd never been provided with any computation of damages. We'd never been provided with any computation of their damages as required by the local rules. Sorry, as required by Rule 26. And so the court attempted to address that by asking Mr. Peterson to state what are the opt-in plaintiffs' damages. What are you going to put in front of this jury that's about to come into the court and hear this case? And the court was very concerned, because the answer kept changing, and that reflected the problem that we had confronted in trying to defend the case. And Rule 26 was adopted to prevent exactly this kind of problem. It was amended in 1993, and I point out that the cases that Mr. Peterson is referring to that require a showing of bad faith or willfulness were all decided under the rules as they existed before the 1993 amendments. As this court in Yeti by Mollie v. Deckers held, the structure of Rule 26 and Rule 37 combined is to impose on the parties an obligation of voluntary disclosure. The idea is that parties will not be surprised in a Perry Mason-like fashion as to what's going to happen at trial. They will know the case when they go into trial, and that will result in an efficiency judicial economy, and parties will know what to expect. Go ahead. Did your client take advantage of Rule 37 to refine the evidence that would be presented? I met and conferred with the plaintiffs many times trying to refine what the evidence and the theory of the case was. Did you file a motion to compel production or bring the matter to the court's attention? We did not, and that was an issue that the court raised in the status conference. The court was initially very concerned that this had not been, that we had not moved to compel. I think that it's fully briefed that there is no requirement to move to compel. But you refer to the intersection or the interaction, interplay between Rule 26 and Rule 37. So if that's your view of how they work together, then why didn't you take advantage of Rule 37, which complements Rule 26, to bring the, you know, the matter to the court's attention? There's several reasons, Your Honor. First and foremost, the discovery deadline had closed, so it would have been required to go in and request an extension of the discovery deadline. Standards for a motion to compel are, suggest that those will not, if there's any delay, that the motion to compel won't be granted, whereas the standards under a voluntary disclosure obligation are that the burden is on the other party to show that it was not harmful and not, and, excuse me, it was not harmless and that it was not, they either have to show, under YETI by Mollie, it's, excuse me, let me. Well, basically it just looks like you guys are playing a game of chicken in this case, as opposed to, you know, if you're playing a game of chess. Are you going to, you know, comply with the letter and spirit of the discovery rules? Actually, Your Honor, that's not true. We provided, we produced every single document that the company had in its possession as to all of the, all of the plaintiffs and the opt-in plaintiffs. There were thousands and thousands of documents produced to the plaintiffs. They're payroll records, they're every penny that they were ever paid. They had records of, they had copied them, we had produced them electronically, they were on a CD. And the problem with the case is that there was the plaintiff's theory. This isn't a case that really was really suitable to representative, proceeding on a representative basis. It wasn't a misclassification where the workers misclassified as exempt when they should have been non-exempt or vice versa. The issue here was, were there hours worked that they weren't fully paid for? And what transpired in the trial that did take place, as did Plaintiff's Hoffman and Lopez, was testimony regarding the actual time that they worked versus what they were paid and whether there was a discrepancy. And what was discovered in that case, although it was shown that there was, claimed at the beginning that there was $35,000 of underpayments, was that in the case of Ms. Hoffman it was $146, which was the amount that the company admitted that because of Hoffman and Lopez's particular situation, there were corrections made, sometimes the hours were put in incorrectly or there were changes, and so the amount of the exact payment wasn't necessarily correct. The jury found that the company owed these two plaintiffs exactly what the company said during the trial, that it did owe them. And that amount has been paid. The question is whether this other group of people who, after all, didn't come forward on their own, they were solicited after the court granted the conditional class certification, they received a notice, they said, I want to join this case, and whether they had any evidence to say that they also didn't get everything they were owed. And in order to determine that, you have to take the hours that were worked, the hours that were paid, and determine if there was a difference. We gave them everything we had. The only thing that was missing was that for some of these people, the timesheets that the guards filled out on paper were not contained in the company's records. And so there were some situations where there were computerized records, but the paper handwritten timesheets, some of those were missing. And so the question was whether those other employees had the right to come in and try to prove that the hours that they worked were different than what the computer records showed. And we conceded that they would have had the right, but they had an obligation to tell us in advance of the trial what that was and how much those figures were. How many people are involved in that? How many people would have been? There were originally 65 people who opted in besides Ms. Hoffman. One of those is Mr. Lopez. So that gets you to 64. Six of those people were not included, we felt, within the definition of the class that was originally certified. And this presents an issue, so we believe that there were 58 opt-in plaintiffs. They should have sent you 58 pieces of paper that says Joe Smith is going to say he worked X hours and got paid for Y hours and Jane Doe worked 12 hours and got paid for 11 hours. Precisely, and they did produce those records for Ms. Hoffman and Lopez, and that formed the basis for, they did that in response to a discovery request that we served. After initially requesting these things through voluntary disclosure, they didn't do it. We served a formal discovery request, they finally produced it. So some indication as to what those amounts were was necessary. Now, Mr. Peterson, I know I'm running up on my time here, but Mr. Peterson made the point that we had that information because we made the Rule 68 offer. The Rule 68 offer was made in advance of the trial, because we hadn't gotten any estimate of damages. We determined, rather arbitrarily, what amount we thought they might be able to prove, based solely on our knowledge of how long they had worked for the company, how complex their assignments were, whether they were rover guards or hourly guards. And we crafted a Rule 68 offer because we were concerned with the fact that this thing was not going to be approved. A train going out of control, and that the attorney's fees would be monumental. As it turns out, they were. There was $4,000 recovered in this case. The fee application was $400,000. The primary focus, if you read the briefs carefully, is that this ruling on the motion in Lomini was an abuse of discretion, and that the court's fee was $400,000. And the second order, which ordered the plaintiffs to recover $40,000, was an abuse of discretion. What the record reflects is that at every point, Judge Phillips, and we don't agree with every ruling she made in the case, but at every point, she issued considered rulings and gave her reasoning in very detailed, well-reasoned, written opinions. There's hundreds of pages of written opinions that have been issued in this case, over a $4,000 dispute, six days of jury trial, and if ever there was a case that showed the proper exercise of judicial discretion, this is it. The appellate decisions that the appellant has cited to, the only case where there's some cases where, in looking at this particular case, the only case where the plaintiff's decision was not a judgment. standard, whether a evidentiary sanction is appropriate or if it's abusive or excessive, there's some cases going both ways. But in every case except the Wendt case, which was decided before the amendments, or based on the law that was in effect before the amendments, and way before Yeti by Malley, in every appellate case cited, the court of appeal said that the plaintiff's decision was not a judgment. The district court properly exercised its discretion. I wanted to ask you before you concluded about the judgment as a matter of law on the claim under Labor Code Section 226, the actual injury requirement. Yes. Okay. There's basically two reasons why we think the Court's ruling there on the judgment as a matter of law should be affirmed. First of all, we think that Judge Phillips's – there's a contrary decision that was issued after Judge Phillips ruled on this by the central district, I believe it was Judge Marshall, in the Wang case. We think Judge Phillips's reasoning is better than the Wang case. But even if you disagree and decide that the reasoning in the Wang case is more appropriate, there's an issue which the Court didn't reach, which was whether or not the PASTA violation, whether that was a willful violation. And we think there's two or three reasons that clearly demonstrate that it wasn't. First of all, here the PASTA violations are completely derivative. There's no claim that the PASTAs that our client issued were defective, that they didn't include all the information they were supposed to include. That's not accurate. They're just saying because you made a mistake on our pay, it's not accurate. That's correct, Your Honor. And they incurred an injury in the sense that there's a hassle they have to do to get a correct statement of their pay. Right. But there's no – other than the hassle factor being – which applies to any potential issue, there's no showing, for example, that the PASTA was very hard to quantify. You get a few bucks in penalty for your trouble. And that's what the other case basically decided in Wang. But in this case, was there a penalty? Was there a penalty awarded? You got a judgment as a matter of law, so there was not even a penalty awarded. That's correct. The court determined that there had been no concrete or actual injury, and that if the California legislature had intended the penalty to be automatic, it would have said so in the statute, and wouldn't have included that language. It's a surplusage issue. And I think that's why Judge Phillips's reasoning is better than Wang. But even if it's not, the issue is – there's an issue that you have to show that it was intentional or willful. And I think given the jury's finding in this case that the other penalties that they were seeking couldn't be imposed because the company had not, for example, willfully refused to pay them all the wages they were due upon termination. I mean, there's no question, given the jury's finding that the company owed Ms. Hoffman $146 and Mr. Lopez approximately $1,000, that they were not paid all the wages they were due upon termination of employment. They didn't get those until after going to trial. But the jury, nevertheless, made a fact-finding on the record that no penalty should be imposed because it was not willful. Let me ask you this final question. You're way over your time. But what about the waiver of the unpaid duty – the unpaid duty-free meal period? If we disagree with the court's determination on that, does that change the outcome of this case? Well, that's a very – I mean, it's a complicated question in terms of what way – in what way that the – That's why I asked it. If the court ruled as a matter – a mixed question of fact and law, which I believe was appropriate determination after hearing the evidence that this employer had the – that the nature of the work permitted a on-duty meal agreement. I understand that. But I'm asking you, if we disagree with that, if we think that the waiver was not valid, does that change the outcome of the case? It may change the amount of damages that were due, because the jury was instructed on the law as the court determined. And I think it – I think it might require a new trial on meal – on the whole issue of meal periods. I mean, the – the other possibility, Your Honor, is that the courts – we didn't agree on that. I would appeal the question of whether the court made a correct legal determination. Another judge, since this case was decided in the Northern District, has concluded the – concluded differently that a – with a very similar meal waiver in the case of involving – it's McFarland v. Guardsmark. And it's a decision by Judge Hamilton in the Northern District that was decided a few months ago. And Judge Hamilton reached a different conclusion about the second meal period. In this case, Judge Phillips determined that the meal waivers were valid and enforceable, but they were only valid and enforceable as to one on-duty meal period during a day or a shift, and that anyone who worked over 10 hours was entitled to a meal period. I understand. You've answered my question. Thank you very much. Mr. Peterson, you used up your time. If you want to take one minute, if you could do that, we'd appreciate it. Succinctly, counsel made a very good point. We would have had to prove what the hours were and what was paid. Succinctly, they never gave us the records. It's in the record. They admit to the district court they only had six complete sets. What they want us to do is guess and give them a guess. We tried to do what we thought was right. We gave them, on the same standards, discovery on the two. They didn't give us discovery on anything else. We did that. Second thing, a number of the issues just discussed are jury questions. And we've mentioned that in our brief, but to hear it here now, particularly in response to Judge Lawson's questions, there's jury questions involved here. And I believe that this does need a remand if the court goes that way, Judge Lawson, and it is a jury question. As the mixed question of law, in fact, I believe that was error, because the decision on whether or not it was impossible to provide a relief or all the factual basis is requisite to that element are questions for a jury. They're not a judge question, because they're not simple mixed questions. They're the ultimate question. And with the evidence that was before the court, it was very clear that these guards could have been relieved and were not. Thank you. You're saying that they did not give you discovery. You heard opposing counsel say that all of the records were given to you except for the sign-in sheets, the actual sign-in sheets for some of the guards. You take issue with that representation? I do. All right. Thank you. Thank you.
judges: Silverman, Rawlinson, Smith